INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA (UAW) and its Locals 104, 604 and 771 and Andrew Kinnear, Lawrence Galloway, Richard Stewart, Leo Rose, John C. Krust, and Mykola Chubenko, Plaintiffs,

v.

FACET ENTERPRISES, INC., a Delaware Corporation, and the Bendix Corporation, a Delaware Corporation, Defendants.

No. 84–CV–0712.

United States District Court,
E.D. Michigan, S.D.

Sept. 27, 1984.

Leonard R. Page, Detroit, Mich., for plaintiffs.

Frank T. Mamat, Bloomfield Hills, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER

PHILIP PRATT, District Judge.

Plaintiffs are the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW") and its Locals 104, 604 and 771, along with six individuals who are members of those locals and retired from employment with defendant Facet Enterprises, Incorporated ("Facet").[1] Plaintiffs commenced this action under Section 301, 29 U.S.C. § 185, and ERISA, 29 U.S.C. § 1132(a), seeking declaratory and injunctive relief as well as damages. Defendant Facet has moved for dismissal on the grounds that there is no "case or controversy" under Article III of the Constitution and that the remaining claims are matters within the exclusive jurisdiction of the National Labor Relations Board. In response, plaintiffs have filed a cross motion for summary judgment claiming that they are entitled to declaratory and injunctive relief.

## I.

Prior to April of 1976, Facet was a wholly-owned subsidiary of defendant Bendix Corporation ("Bendix"). In April, a Federal Trade Commission decree required Bendix to divest itself of Facet. As part of the reformation, Facet gained independent control, among other items, over three plants: the Filter Products Division in Madison Heights, the Fuel Devices Division in Detroit, and the Motor Components Division in Elmira, New York. At the time of the decree until the present, the UAW and its locals have been the bargaining representatives for workers in the three plants. In conjunction with the spin off of Facet and with the urging and consent of the UAW, Bendix entered into a limited guaranty of specified pension and insurance benefits for retirees and for employees who had ten years of service as of April of 1976 and who subsequently retired from Facet. The apparent purpose of the guaranty is to protect the aforementioned individuals' rights to receive pension and insurance coverage in the event Facet did not provide such benefits.

After April of 1976, Facet and the UAW entered into a series of collective bargaining agreements. These agreements established pension and health plans for members of the bargaining unit. Under the plans, Facet was to make contributions for current employees as well as contributions for retirees.

The parties' most recent collective bargaining agreement expired on October 31, 1983. Negotiations for a new bargaining agreement had begun in August of 1983. The UAW submitted the affidavit of John Mando, Director of the UAW's Bendix and Facet Intracorporation Councils, in opposition to defendants' motion. In his affidavit Mando states that in negotiations conduct-

**1.** The six individual plaintiffs are retirees who were formerly employed at the three plants which are covered by the collective bargaining agreements between the UAW and Facet. Plaintiffs Andrew Kinnear and Lawrence Galloway are alleged to have retired from the Detroit plant in December 1961 and December 1979, respectively. Plaintiffs Richard Stewart and Leo Rose are alleged to have retired from the Elmira plant in February of 1984 and July of 1975, respectively. Plaintiffs John C. Krust and Mykola Chubenko are alleged to have retired from the Madison Heights plant in May of 1975 and December of 1983, respectively.

ed in September of 1983 Facet proposed the possibility of reducing insurance coverage for its 1,400 retirees. Mando Affidavit ¶ 11. The union rejected this suggestion. The parties were unable to agree on a new contract before the expiration date. Apparently, Facet demanded substantial concessions from the Elmira and Madison Heights employees which the UAW could not accept. Consequently, a strike commenced in early November of 1983. To this date, the parties have still been unable to reach an agreement and are continuing negotiations.

On November 15, 1983, Facet submitted a formal written proposal that included reductions in health and life insurance benefits for current employees and retirees of the Madison Heights and Elmira plants. The proposal contemplated that these changes would be implemented on December 1, 1983. According to Mando, "Facet threatened to implement these changes, absent agreement, on December 1, 1983." Mando Affidavit ¶ 12. The language of the proposal, however, does not suggest such unilateral action. Contemporaneous with the proposal of reductions for the Madison Heights and Elmira plants, Facet also proposed wage increases and insurance benefits better than those in the expired agreement for the financially stronger Fuel Devices Division in Detroit. Paul Dick Affidavit, ¶ 12 (Director of Industrial Relations for Facet).

Facet did not effectuate any change in retiree benefits in December of 1983 or any other time. In fact, Facet withdrew its proposal to reduce insurance benefits in January, 1984. The parties disagree as to the facts surrounding Facet's withdrawal of the proposal. According to Mando, on January 9, 1984, the UAW threatened to file unfair labor practice charges for bargaining to impasse over retiree insurance which is a "permissive" subject of bargaining. Mando further asserts that on Janu-

ary 10, 1984, the company only withdrew its proposal to reduce retiree benefits at the Elmira plant but not the Madison Heights location. Mando Affidavit ¶ 13.[2] Paul Dick, the defendant's representative, in his affidavit, asserts that the proposal to narrow benefits was withdrawn for both plants and that there are no proposals before the parties concerning this issue. Dick Affidavit ¶ 13. Facet's counsel reiterated this assertion at the hearing and also stated that if there is any doubt, Facet again withdraws the proposal for both plants. Significantly, Mando further states in his affidavit that "[t]here have been no further discussions regarding retiree insurance benefits during negotiations for a new master agreement," since the withdrawal of Facet's proposal in early January. Mando Affidavit ¶ 14.

On February 10, 1984 plaintiffs filed their complaint. The complaint consists of three counts. Count One seeks damages and declaratory and injunctive relief under § 301, 29 U.S.C. § 185, for an alleged breach of the collective bargaining agreement regarding health and insurance benefits of "retired employees and those who will retire and their eligible dependents." Count Two is a claim under ERISA, 29 U.S.C. § 1132(a)(1)(B), which "seeks to recover benefits due and to clarify rights to future benefits under an employee health and life insurance benefit plan." Count Three requests declaratory and injunctive relief and damages for breach of the "guaranty" contract entered into by the union and defendant Bendix Corporation.

Through the series of briefs concerning the instant motions and during oral argument at the hearing, plaintiffs have retreated from the broad language of their complaint and are now pursuing a narrower scope of claims. First, at the hearing, the plaintiffs agreed to dismiss Count Three of the complaint and Bendix as a party defendant. Plaintiffs admitted that not only has Bendix not breached the "guaranty" as

---

2. In their complaint, plaintiffs averred that the proposal had been withdrawn for both plants. Plaintiffs now wish to rely on the Mando Affidavit in this regard and request the Court to view

the complaint as amended where it is not in conformity with the facts alleged in the Mando Affidavit.

plaintiffs averred in the complaint, but that Bendix has made no indication that it would not honor that agreement. Second, plaintiffs have likewise implicitly recognized that Facet has not breached the parties' past collective bargaining agreement, despite plaintiffs' allegations to the contrary. Plaintiffs have not presented any facts which suggest that Facet actually breached the contract. Moreover, all of plaintiffs' proofs and arguments focus upon Facet's alleged threatened breach of the agreement. Third, plaintiffs also concede explicitly in their briefs and implicitly by argument,[3] that they are not pursuing claims of present employees in this action. Hence, stripped of the superfluous, plaintiffs are now only seeking relief from Facet's alleged threatened breach of their obligation under past collective bargaining agreements for the approximately 1,400 current retirees.[4]

Essentially, the claim of plaintiffs is that the benefits the 1,400 retirees are receiving pursuant to past collective bargaining agreements are vested and cannot be changed. Presumably, plaintiffs seek a declaration from this Court which sustains that proposition. Defendant Facet contends that this case should be dismissed since it is not seeking to change retiree benefits and, accordingly, no case or controversy exists. Facet also argues that dismissal is appropriate due to the pre-emptive jurisdiction of the NLRB.

The threshold issue concerns the appropriateness of adjudication of this controversy. The allegation of a *threatened* harm, as claimed by the plaintiffs here necessitates the application of two related doctrines of justiciability; standing and ripeness. The Supreme Court recently enunciated the test for Article III standing in

*Allen v. Wright,* — U.S. ——, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). The *Allen* Court began its analysis by recognizing that "[i]n essence the question of standing is whether the litigant is entitled to have the Court decide the merits of the dispute or of particular issues." *Id.* at 3324. The Court identified three components to the standing analysis which are to guide courts in this determination: "A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be repressed by the requested relief." *Id.* at 3325.

As to the first prong, *"personal* injury", the injury must be "distinct and palpable" to the plaintiff and not "abstract" or "conjectural" or "hypothetical". 104 S.Ct. at 3325;[5] *Duke Power Co. v. Carolina Environmental Study Group, Inc.,* 438 U.S. 59, 72–73, 98 S.Ct. 2620, 2629–2630, 57 L.Ed.2d 595 (1978). *Accord, Young v. Klutznick,* 652 F.2d 617, 623–24 (6th Cir. 1981). The Court must consider: "Is the injury too abstract, or otherwise not appropriate, to be considered judicially cognizable?" *Allen v. Wright, supra,* 104 S.Ct. at 3325. Second, the injury "must be 'fairly' traceable to the challenged action ..." *Id.* The Court should determine whether "the line of causation between the illegal conduct and injury [is] too attenuated." *Id.* Third, the "relief from the injury must be likely to follow from a favorable decision." *Id.* In other words, "[i]s the prospect of obtaining relief from the injury as a result of a favorable ruling too speculative?" *Id.*

■ Unlike the standing doctrine, ripeness is not a condition of justiciability imposed by the Constitution, but is a doctrine of judicial self-restraint. Even though Article III can be technically satisfied and

---

3. *See e.g.,* Plaintiffs' Brief in Support of Motion for Summary Judgment at 15–16.

4. Plaintiffs' counsel began his oral arguments by declaring that the 1,400 retirees are seeking to be freed "from threats of Facet to withdraw benefits."

It should be mentioned that the same counsel is representing both the UAW and the six individual plaintiff-retirees. A conflict of interest may exist in this representation, however, the

Court's disposition of the instant motion makes that issue moot.

5. Quoting from *City of Los Angeles v. Lyons,* 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983); *Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979); *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *O'Shea v. Littleton,* 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974).

standing is present, "problems of prematurity and abstractness ... may prevent adjudication in all but the exceptional case." *Buckley v. Valeo*, 424 U.S. 1, 114, 96 S.Ct. 612, 680, 46 L.Ed.2d 659 (1976); *Young v. Klutznick, supra,* 652 F.2d at 625. The Supreme Court has established two inquiries to be resolved in this regard. Courts must first "determine whether the issues tendered are appropriate for judicial resolution" and "assess the hardship to the parties if judicial relief is denied at this stage." *Toilet Goods Association v. Gardner*, 387 U.S. 158, 162, 87 S.Ct. 1520, 1523, 18 L.Ed.2d 697 (1967); *Young v. Klutznick, supra,* 652 F.2d at 625.

■ As the Court of Appeals for the Sixth Circuit recognized in *Young v. Klutznick, supra,* 652 F.2d at 625, "[t]he question whether tendered issues are appropriate for judicial resolution clearly 'bears close affinity' to questions of standing." *Quoting, Warth v. Seldin, supra,* 422 U.S. at 499, 95 S.Ct. at 2205. Essentially, the ripeness doctrine is a question of timing concerning the avoidance of passing upon "complex problems in the abstract and the general ..." *Young v. Klutznick, supra,* 652 F.2d at 626. *See Regional Rail Reorganization Act Cases*, 419 U.S. 102, 140, 95 S.Ct. 335, 357, 42 L.Ed.2d 320 (1974); *Gardner v. Toilet Goods Association*, 387 U.S. 167, 200, 87 S.Ct. 1526, 1530 (1967) (Fortas, J., concurring in part and dissenting in part). The question of abstractness or the concreteness of issues in the ripeness doctrine is closely akin to the specific personal injury component of the standing doctrine. This is particularly true in a case such as the instant one, where the claimed harm is allegedly threatened and has not actually occurred. In this situation the differences in the doctrines is a matter of degree. The Court must examine whether the threat of injury is beyond conjecture or speculation to constitute a distinct and palpable injury for Article III or standing purposes. Further, even if the threat of injury is sufficiently real to satisfy standing requirements, the Court must also determine whether the threat of injury is presented in a timely factual context which is not abstract or ill-defined.

In the case at bar, plaintiffs assert three related arguments or grounds which they contend establish that this matter is properly justiciable. First, plaintiffs argue that since Facet threatened unilateral implementation of reductions in retiree benefits in November of 1983, it is likely that Facet may attempt to do so in the future. Also, plaintiffs contend that since Facet does not recognize retiree benefits as vested and not subject to reduction even with UAW agreement, a threat to breach past bargaining agreements exists which is justiciable. Second, since retiree benefits are a permissible subject of negotiations and since the parties "appear to be at impasse on the issue," according to the plaintiffs, "Facet may have the right under the NLRA to implement its final offer as it has done for the strikers who returned to work in February." Plaintiff's Brief in Support of Motion for Summary Judgment, at 12. Third, plaintiffs assert that 1,400 retirees have become "highly fearful" of Facet's threat and that many current employees are prematurely retiring due to the threats.

■ Plaintiffs' arguments do not establish that this case is presently at a proper stage for adjudication. Plaintiffs' claims of threatened harm are too abstract to satisfy standing requirements, as well as too ill-defined for timely adjudication. Specifically, as to plaintiffs' first argument, there is no substantial threat that Facet will unilaterally implement reductions in retiree benefits independent of the union's consent. Plaintiffs claim that because Facet threatened unilateral reductions in November of 1983, a likelihood exists that Facet will do so in the future. The Court cannot agree. Facet suggested reduction in retiree benefits as part of a proposal placed on the bargaining table in November of 1983. It may be, as Mando's Affidavit asserts, that Facet "threatened" to implement the reductions absent UAW consent. However, no reductions occurred and Facet removed the proposal from consideration. Facet's actions do not indicate that it is

likely to implement unilateral changes. Facet placed the proposal on the bargaining table and sought UAW concurrence. The proposal was not drafted as a "threat" but as a plan for bargaining consideration. Thus, in itself, Facet's past "threat" to implement reductions does not indicate a substantial likelihood that Facet will unilaterally reduce benefits and the injury to plaintiffs is too abstract for adjudication.

At most, the parties' disagreement is a difference in contract interpretation which does not and cannot be addressed by this Court. It is Facet's position that pension benefits for retirees under past collective bargaining agreements can be changed with union consent. Plaintiffs, on the other hand, contend that retiree benefits are vested and not subject to change. Presumably, plaintiffs claim that once an employee retires his right to benefits as provided in the collective bargaining agreement in existence at his retirement cannot be changed absent the retiree's consent. According to the plaintiffs, the fact that Facet and the union negotiated these benefits in arriving at an agreement, does not mean that Facet and the union can later change the benefits.

Facet's understanding would be of consequence but for the union's posture in this regard. Not only does the union maintain that it lacks authority to agree to reductions in retiree benefits, the union firmly and unqualifiedly maintains that it will not consent to any reductions. In fact, the union's counsel stated that it would be "over his dead body" that the union would ever affirm changes in retiree benefits. Therefore, since Facet apparently will not reduce benefits without the union's consent and since there is no possibility of obtaining such consent, plaintiffs' "injury" or potential "injury" is too abstract and speculative to satisfy standing requirements.

■ Furthermore, even if plaintiffs might technically satisfy such requirements, the present controversy is not "ripe" for adjudication. The ripeness doctrine directs an inquiry into the appropriateness of the issues presented for judicial resolution and the harm which might result from judicial abstention. *Toilet Goods Association v. Gardner, supra.* The circumstances before the Court do not present such a controversy. Despite the language in the complaint, the plaintiffs have suffered no injury from Facet's position that the union can consent to changes in retiree benefits. No retiree benefits have been changed and Facet is unlikely to unilaterally implement changes. Such an ill-defined factual setting is inappropriate to carry to decision. The plaintiffs, themselves, demonstrate the speculative and undefined nature of the instant case in their arguments before the Court. Plaintiffs' complaint seeks broad relief for all employees and retirees of defendant. The complaint asserts that defendant breached past collective bargaining agreements and even goes so far as to seek damages. During the course of arguments in briefs for these motions, however, plaintiffs changed their position several times to dramatically reduce the scope of the case. Plaintiffs' shifts in positions were apparent responses to the realization that they lacked factual support for their claims and arguments. Finally, at the hearing, plaintiffs presented the latest version of the instant "controversy"—one significantly different and most limited in scope. Plaintiffs' difficulty in presenting the issues to be resolved reflects the speculative ill-defined factual setting of this case.

■ Proper judicial adjudication requires a factual context to ensure issue resolution. The facts before the Court do not indicate that this case is presently "ripe" for adjudication. The Court would be rendering a decision based upon speculation which is unlikely to properly resolve this matter. Hence, since no harm will be suffered by plaintiffs absent judicial determination, the Court must decline to adjudicate this case.

■ Plaintiffs' two other contentions for the existence of standing are equally without merit. Plaintiffs argue that since retiree benefits are a permissible subject of negotiations and since the parties "appear

to be at impasse" on the issue "that Facet may have a right under the NLRA to implement its final offer concerning retiree benefits." This alleged controversy is a matter concerning negotiations for a collective bargaining agreement which falls under the NLRA and is not a dispute which can be resolved by this Court. Claims for violations of or obligations under the NLRA are within the exclusive jurisdiction of the NLRB. *See Local 100 v. Borden,* 373 U.S. 690, 83 S.Ct. 1423, 10 L.Ed.2d 638 (1963); *NLRB v. Jones & Laughlin Steel Corp.,* 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893 (1937); *Lexington Cartage Co. v. Teamsters,* 713 F.2d 194, 195 (6th Cir.1983); *Mayer v. Ordman,* 391 F.2d 889 (6th Cir.), *cert. denied,* 393 U.S. 925, 89 S.Ct. 257, 21 L.Ed.2d 261 (1968). In fact, plaintiffs are presently pursuing a resolution of this issue—whether Facet has a right to refuse to bargain on retiree benefits or whether Facet can "force" the UAW to bargain over these benefits—before the NLRB. Therefore, plaintiffs' assertion in this regard is without merit and does not establish proper standing of this case.

Plaintiffs' third contention is that the 1,400 retirees of Facet have become "highly fearful" of Facet's threat and that many current employees are prematurely retiring due to the threats. This argument is wholly without merit. First, plaintiffs' position at the oral argument concerned only the rights of retirees. Plaintiffs admit that benefits of current employees are a matter of collective bargaining negotiations and exclusively within the jurisdiction of the NLRB. UAW Brief in Support of Motion for Summary Judgment at 16. Hence, the "fear" of current employees which allegedly caused or causes them to retire early is not an "injury" this Court can remedy.

Second, the early retirement of these fearful employees is not an injury "fairly traceable to the challenged action" as is required in the second prong of the standing test enunciated in *Allen v. Wright, supra.* In his affidavit, Mando asserts that since the commencement of the strike, many employees who are eligible to retire asked the union for advice. According to Mando, the union advised members that the parties had reached an impasse on the issue of retiree benefits, that the law permitted Facet to implement its final offer on such benefits, that Facet's proposals were becoming steadily worse in this regard and that the prospects for negotiating a satisfactory labor agreement was remote. Mando Affidavit ¶ 15. Mando further stated "[b]ased on these factors, many Facet employees advised the UAW that they feared that delaying their retirement any longer would risk a loss of the existing level of benefits". *Id.,* ¶ 16. This "injury" of premature retirement is not fairly traceable to the alleged wrongful conduct of defendant. Plaintiffs seek a declaration by this Court that retiree benefits are vested and not subject to change. Plaintiffs are attempting to cure the perceived volatile position of retirees—that Facet will reduce retiree benefits, either unilaterally or with union consent. The premature retirement of current employees cannot be attributed to Facet's alleged "threats" to reduce *past* retiree benefits. The impetus for the premature retirements is not the "injury" plaintiffs have presented to this Court for resolution, but rather is a matter exclusively in the jurisdiction of the NLRB. Thus, plaintiffs' third argument is also meritless.

In conclusion, plaintiffs' cause of action does not present a "controversy" which has standing before this Court and is not timely for proper adjudication. Thus, plaintiffs' complaint should be dismissed.

IT IS SO ORDERED.