[No. B010723. Second Dist., Div. Seven. Oct. 9, 1985.]

BERNARD SHERWYN et al., Plaintiffs and Appellants, v.
DEPARTMENT OF SOCIAL SERVICES et al.,
Defendants and Respondents.

COUNSEL

William W. Handel, in pro. per., for Plaintiffs and Appellants.

John K. Van de Kamp, Attorney General, Charlton D. Holland, Assistant Attorney General, Anne S. Pressman, Supervising Deputy Attorney General, De Witt W. Clinton, County Counsel, and Sterling Honea, Deputy County Counsel, for Defendants and Respondents.

## OPINION

**THOMPSON, J.**—In this declaratory relief action plaintiffs attack the constitutional validity of Civil Code section 7005,[1] Evidence Code section 621,[2] and the adoption policy, as set out in the all-county letter No. 83-131, dated December 30, 1983, as applied to surrogate parenting arrangements. Plaintiffs, William W. Handel and Bernard Sherwyn, appeal from a judgment declaring the statutes and adoption policy constitutional and valid, both in general and as applied to the plaintiffs, and denying plaintiffs' request for

---

[1]Civil Code section 7005 provides: "(a) If, under the supervision of a licensed physician and with the consent of her husband, a wife is inseminated artificially with semen donated by a man not her husband, the husband is treated in law as if he were the natural father of a child thereby conceived. The husband's consent must be in writing and signed by him and his wife. The physician shall certify their signatures and the date of the insemination, and retain the husband's consent as part of the medical record, where it shall be kept confidential and in a sealed file. However, the physician's failure to do so does not affect the father and child relationship. All papers and records pertaining to the insemination, whether part of the permanent record of a court or of a file held by the supervising physician or elsewhere, are subject to inspection only upon an order of the court for good cause shown.

"(b) The donor of semen provided to a licensed physician for use in artificial insemination of a woman other than the donor's wife is treated in law as if he were not the natural father of a child thereby conceived."

[2]Evidence Code section 621 provides: "(a) Except as provided in subdivision (b), the issue of a wife cohabiting with her husband, who is not impotent or sterile, is conclusively presumed to be a child of the marriage.

"(b) Notwithstanding the provisions of subdivision (a), if the court finds that the conclusions of all the experts, as disclosed by the evidence based upon blood tests performed pursuant to Chapter 2 (commencing with Section 890) of Division 7 are that the husband is not the father of the child, the question of paternity of the husband shall be resolved accordingly.

"(c) The notice of motion for blood tests under subdivision (b) may be raised by the husband not later than two years from the child's date of birth.

"(d) The notice of motion for blood tests under subdivision (b) may be raised by the mother of the child not later than two years from the child's date of birth if the child's biological father has filed an affidavit with the court acknowledging paternity of the child.

"(e) The provisions of subdivision (b) shall not apply to any case coming within the provisions of Section 7005 of the Civil Code or to any case in which the wife, with the consent of the husband, conceived by means of a surgical procedure.

"(f) The notice of motion for the blood tests pursuant to subdivision (b) shall be supported by a declaration under oath submitted by the moving party stating the factual basis for placing the issue of paternity before the court. This requirement shall not apply to any case pending before the court on September 30, 1980.

"(g) The provisions of subdivision (b) shall not apply to any case which has reached final judgment of paternity on September 30, 1980."

an injunction against defendants, California State Department of Social Services and Los Angeles County Department of Adoptions.

## FACTS AND PROCEEDINGS BELOW

On June 5, 1984, plaintiffs, attorneys specializing in the practice of reproductive technology, brought this action for declaratory relief, and for an injunction, naming California State Department of Social Services and Los Angeles County Department of Adoptions as defendants. They alleged that they are presently representing over 100 couples involved in surrogate parenting arrangements. They further alleged that in surrogate parenting arrangements the defendants are following the policy set forth in the all-county letter No. 83-131, dated December 30, 1983, which provides that, in accordance with Civil Code section 7005, subdivision (b), a sperm donor in a surrogate parenting arrangement should not be regarded as the natural father of the child born and that, unless the sperm donor has established his paternity, the couple, who contracts with the surrogate mother, must proceed by an independent adoption upon the birth of the child rather than a stepparent adoption. They then challenge the statute (Civ. Code, § 7005) as being unconstitutionally applied to surrogate arrangements, alleging that: (1) the statute discriminates against couples who enter into a surrogate arrangement for the purpose of the biological father receiving custody; (2) the statute infringes on the biological father's right to procreate and forces him to adopt his own child through an independent adoption process; (3) the statute violates the equal protection provision of the 14th Amendment as to biological fathers in surrogate arrangements; (4) the statute violates the due process clause of the 14th Amendment as to biological fathers in that it denies them the opportunity to prove paternity; (5) the statute, by requiring an independent adoption, may invoke the application of the conclusive presumption of Evidence Code section 621 in violation of the 14th Amendment rights of the biological father; and (6) the statute as presently applied effectively forces couples to commit adultery in order to conceive a child.

Defendants, in their answer, admit every allegation of the complaint, except the allegations of unconstitutionality, and assert that plaintiffs fail to set forth facts sufficient to constitute a cause of action.

On December 28, 1984, a pro forma trial was had, after which a judgment was entered in favor of defendants. This appeal on the judgment roll followed. Plaintiffs make the same claims on appeal that they urged before the trial court.

## DISCUSSION

## I

### NATURE OF THE PROBLEM

Advances in biomedical technology and scientific understanding have created for many *married* couples, who would remain childless, an opportunity to become parents either through the long-standing medical practice of artificial insemination, or by the more recent techniques of in vitro fertilization and embryo transfer. How well this expectation is realized may turn largely on nonscientific issues. (See Wadlington, *Artificial Insemination: The Dangers of a Poorly Kept Secret* (1970) 64 Nw.U.L.Rev. 777; Curie-Cohen, Luttrell, and Shapiro, *Current Practice of Artificial Insemination by Donor in the United States* (1979) 300 N.Eng.J.Med. 585; Report of the Ethics Advisory Board, DHEW, *Protection of Human Subjects, HEW Support of Human In Vitro Fertilization and Embryo Transfer* (June 18, 1979) 44 Fed.Reg. 35033, 35034.)

There are two types of artificial insemination. One is called homologous artificial insemination (AIH) in which the husband's semen is used to impregnate his wife's ovum. This technique will usually not pose legal problems regarding the status of the child and the relationship of the husband and donor to the child because the mother's husband is also the biological father of the child. (See *People* v. *Sorensen* (1968) 68 Cal.2d 280, 284, fn. 2 [66 Cal.Rptr. 7, 437 P.2d 495, 25 A.L.R.3d 1093].) The other type is called heterologous artificial insemination (AID) in which the semen from a third party "donor" is used to inseminate the woman. Although this practice may create legal problems regarding the legal status of the parties, California has given statutory permission to married couples to use the practice, if both spouses give written consent. However, the legal status among the parties has been spelled out in the statute to provide that where "a wife is inseminated artificially with semen donated by a man not her husband, the husband is treated in law as if he were the natural father of a child thereby conceived." (Civ. Code, § 7005, subd. (a).)

The other techniques are called in vitro fertilization (I.V.F.) and embryo transfer. These techniques permit some infertile women to actually bear their own child, or have it carried to term by a surrogate mother. Under these procedures, a woman's ova is placed in a laboratory medium with sperm, allowed to mature and fertilized, and then transferred into the uterus of either the woman who provided the ova or a different woman who is at about the same stage in her hormonal cycle as the ova's donor.

However, regardless of which technique is used in connection with artificial conception, legal problems may be created where a surrogate mother

is used by the married couple. Here, the problems, like coins, are placed on their edge, exposing both their legal and social terrain, and the tension between them. For example, a married couple may enter into an agreement with a surrogate mother, who may be either married or unmarried, whereby the sperm of the fertile husband is used to inseminate artificially the surrogate mother to carry his "alleged" child in order to provide a child for the husband and his infertile wife. Under these circumstances, the husband may be prevented from proving that he is the biological father of the child because of subdivision (b), section 7005 of the Civil Code. That subdivision provides that "[t]he donor of semen provided . . . for use in artificial insemination of a woman other than the donor's wife is treated in law as if he were not the natural father of a child thereby conceived." Moreover, if the surrogate mother is married, section 621 of the Evidence Code, which establishes a presumption that the issue is a child of the marriage, may be called into play. Furthermore, the surrogate arrangement may be contrary to the policy expressed in section 273, subdivision (a) of the Penal Code, which makes it a misdemeanor to pay money or anything of value to a parent for the consent or cooperation of the parent to a subsequent adoption of the child. (See Comment, *Contracts to Bear a Child* (1978) 66 Cal.L.Rev. 611, for a detailed discussion of the problems in this situation.)

In the case at bench, plaintiffs attempt to raise these problems by a constitutional challenge to the subject statutes and the adoption policy of the defendants.

## II

### Lack of Justiciable Controversy

At the outset we are confronted with the question whether this action presents a justiciable controversy.

The concept of justiciability requires us to examine two important but intertwined requirements. (*California Water & Telephone Co.* v. *County of Los Angeles* (1967) 253 Cal.App.2d 16, 22 [61 Cal.Rptr. 618].)

The first requirement is ripeness, which means that a controversy "has reached, but has not passed, the point that the facts have sufficiently congealed to permit an intelligent and useful decision to be made. [Fn. omitted.]" (*Ibid.*) Its purpose is to prevent courts from issuing purely advisory opinions. (*Pacific Legal Foundation* v. *California Coastal Com.* (1982) 33 Cal.3d 158, 170 [188 Cal.Rptr. 104, 655 P.2d 306].) In this regard, "the ripeness doctrine is primarily bottomed on the recognition that judicial decisionmaking is best conducted in the context of an actual set of facts so that the issues will be framed with sufficient definiteness to enable the court to make a decree finally disposing of the controversy. On the other

hand, the requirement should not prevent courts from resolving concrete disputes if the consequences of a deferred decision will be lingering uncertainty in the law, especially when there is widespread public interest in the answer to a particular legal question." (*Ibid.*)

■ The other requirement is one of standing, which goes to the existence of a cause of action in the plaintiff. (*Parker* v. *Bowron* (1953) 40 Cal.2d 344, 351 [254 P.2d 6].) "It is elementary that a plaintiff who lacks standing cannot state a valid cause of action; therefore, a contention based on a plaintiff's lack of standing cannot be waived under Code of Civil Procedure section 430.80 and may be raised at any time in the proceeding." (*McKinny* v. *Board of Trustees* (1982) 31 Cal.3d 79, 90 [181 Cal.Rptr. 549, 642 P.2d 460].)

■ An action for declaratory relief is authorized by section 1060 of the Code of Civil Procedure which provides in part: "Any person . . . who desires a declaration of his rights or duties with respect to another . . . may, in cases of actual controversy relating to the legal rights and duties of the respective parties, bring an original action in the superior court . . . for a declaration of his rights and duties in the premises. . . ." In short, the essence of an action for declaratory relief is an allegation showing that either an actual (present), or probable future, controversy exists relating to the legal rights and duties of the parties, coupled with a request that those rights and duties be adjudged by the court. (*Chas. L. Harney, Inc.* v. *Contractors' Bd.* (1952) 39 Cal.2d 561, 564 [247 P.2d 913]; *Maguire* v. *Hibernia S. & L. Soc.* (1944) 23 Cal.2d 719, 728 [146 P.2d 673, 151 A.L.R. 1062].) However, the standard for the granting of declaratory relief which is in the nature of ripeness and standing is well established. The controversy must be "one which admits of definitive and conclusive relief by judgment within the field of judicial administration, as distinguished from an advisory opinion upon a particular or hypothetical state of facts. The judgment must decree, not suggest, what the parties may or may not do." (*Selby Realty Co.* v. *City of San Buenaventura* (1973) 10 Cal.3d 110, 117 [109 Cal.Rptr. 799, 514 P.2d 111]; Accord, *Pacific Legal Foundation* v. *California Coastal Com., supra,* 33 Cal.3d at pp. 170-171.)

■ In the present case it does not appear that a justiciable controversy is presented. Plaintiffs, as individuals, have not alleged that they or either of them are now, or plan to be, a party to a surrogate parenting arrangement, which will be affected by the subject statutes or the adoption policy contained in the all-county letter No. 83-131. Plaintiffs have merely alleged that they, as attorneys, presently represent over 100 couples who are parties to such arrangements. Hence, it appears the complaint states a cause of action in someone, but not in the plaintiffs. (See *Klopstock* v. *Superior Court* (1941) 17 Cal.2d 13, 18-19 [108 P.2d 906, 135 A.L.R. 318].) Thus, we

conclude plaintiffs do not have standing in this action. Moreover, were we to allow attorneys to bring declaratory relief actions because some of their clients need guidance and the law is uncertain, the courts would be flooded with such lawsuits, causing the courts to lose control over their workload.

The concept of ripeness in part was "designed to regulate the workload of courts by preventing judicial consideration of lawsuits that seek only to obtain general guidance, rather than to resolve specific legal disputes." (*Pacific Legal Foundation* v. *California Coastal Com.*, *supra*, 33 Cal.3d at p. 170.) For example, in *People* ex rel. *Lynch* v. *Superior Court* (1970) 1 Cal.3d 910 [83 Cal.Rptr. 670, 464 P.2d 126], the Attorney General sought a writ of mandate to obtain a judicial determination that a statute authorizing prejudgment attachment violated procedural due process under the rule of *Sniadach* v. *Family Finance Corp.* (1969) 395 U.S. 337 [23 L.Ed.2d 349, 89 S.Ct. 1820]. The Attorney General asserted that the court clerks, sheriffs and marshalls who issued and served writs of attachments wished to be advised as to the validity of the statute under *Sniadach*. After pointing out that there was no debtor or creditor who was party to a prejudgment attachment of any kind and who sought relief with respect thereto before the court, the Supreme Court unanimously denied the request, stating that the rendition of advisory opinions was neither within the function nor jurisdiction of the court. (1 Cal.3d at p. 912.)

Although we have grave doubts about the applicability of Civil Code section 7005, subdivision (b), to surrogate arrangements entered into by married couples, and the use of Evidence Code section 621 in such situations where the surrogate mother is married and her husband has joined in the arrangement, we hold that this case does not present a justiciable controversy. Thus, it was an abuse of discretion for the trial court to entertain the action and exercise its discretion to declare the rights of the parties, even though contrary to the declaration sought by plaintiffs.

Accordingly, the judgment is vacated and the trial court is directed to dismiss the action.

Lillie, P. J., and Johnson, J., concurred.