**INDIANA CIVIL RIGHTS COMMISSION and Roselee Thomas,
Appellants (Respondents Below),**

v.

**INDIANA DEPARTMENT OF AGING
AND COMMUNITY SERVICES,
Appellee (Petitioner Below).**

No. 49A02–8802–CV–00066.[1]

Court of Appeals of Indiana,
First District.

Oct. 27, 1988.

1. This case was diverted from Judge Sullivan's office by direction of the Chief Judge.

Roy D. Rogers, Indianapolis, for appellants.

Linley E. Pearson, Atty. Gen., Robert K. Robisch, Deputy Atty. Gen., Debra B. Hendrickson, Staff Counsel, Indiana Dept. on Aging and Community Services, Indianapolis, for appellee.

ROBERTSON, Judge.

The Indiana Civil Rights Commission and Roselee Thomas bring this appeal challenging a determination by the trial court that the Commission's order against the Indiana Department on Aging and Community Services (IDACS) was arbitrary and capricious, an abuse of discretion and based upon insufficient evidence.

We affirm.

We address the following issues in this opinion:

(1) whether Thomas's complaint was timely filed with the Commission;

(2) whether the Commission acted properly in joining the IDACS as a party; and,

(3) whether the Commission acted arbitrarily and capriciously when it vacated the order of its chairman dismissing the complaint as to the IDACS, and entered judgment against IDACS.

Thomas initiated this action by filing with the Commission a complaint alleging discriminatory treatment by her former employer, United Neighborhood Councils, Inc. (UNC). This occurred around August 15, 1983. A second complaint was filed, clarifying the earlier allegations on January 19, 1984. UNC responded and an investigation by the Commission ensued. On July 30, 1984, the Commission concluded that probable cause existed to believe the UNC violated the Indiana Civil Rights Act, IND.CODE 22-9-1-2 *et seq.* and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and began conciliatory efforts with the parties.

Thereafter, on or about January 19, 1985, seventeen months after the filing of her complaint, Thomas sought to amend her complaint by adding the IDACS as a party-defendant. Apparently, the Commission granted the request as a matter of right, although the record does not affirmatively show that such a ruling was made or anyone acting on behalf of the Commission ever considered the motion. The IDACS responded with a motion to dismiss, argu-

ing that no employer-employee relationship ever existed between the IDACS and Thomas. After the issue was fully briefed and argued, the chairman of the Commission granted the IDACS's motion, entering special findings of fact and conclusions of law. The chairman found in essence that the IDACS lacked the ability to control any of the discriminatory employment practices alleged by Thomas. Thomas did not request a reconsideration of this issue, ask for a hearing or raise any objection whatsoever. Neither did she seek judicial review.

Approximately six months later, on January 27, 1986, Thomas and the UNC conferred with a hearing officer to determine the viable issues for hearing. The IDACS did not receive notice of the conference and did not participate. UNC at that point was no longer in operation and was judgment proof. Thomas maintained that the IDACS was a proper party but no ruling on the issue was made. The hearing officer's statement indicates that the parties were advised that motions would be ruled upon ten days after filing and that replies must be filed or an extension of time secured within that period to insure consideration.

On April 1, 1986, Thomas moved for an order of default, which was granted by the hearing officer. The record shows the IDACS was not served with a copy of that motion, the hearing officer's recommended order or recommended findings. Thomas then filed an objection to the chairman's order of June 20, 1985 dismissing the IDACS; she made no objection to the recommended order of the hearing officer. The IDACS objected to oral argument or hearing because Thomas's objections were untimely and judicial review had not been sought, but the Commission's chairman overruled the objection. Both parties waived oral argument. On December 12, 1986, the full Commission entered an order finding that the IDACS had the right to control UNC's employment practices, and that no reason existed to reopen the liability question because the IDACS had been served a statement of the matters considered at the prehearing conference. The Commission concluded that the IDACS and UNC were jointly and severally liable, or-

dering a payment of damages in the amount of $32,476.50.

In its petition for judicial review, the IDACS argued that the decision was arbitrary and capricious, exceeded the Commission's statutory authority, was not supported by the evidence, and was accomplished without notice and a hearing. The trial court agreed, concluding that I.C. 4–22–1–12 and 910 IAC 1–12–1 provided for a ten-day period within which objections could be filed.

## I.

■ The IDACS argues in its appellee's brief that the Commission lacked subject matter jurisdiction because Thomas's complaint was untimely. Thomas's first complaint, filed on August 15, 1983, alleges that the last occurrence of the alleged discriminatory practice was on August 5, 1983. It shows that an internal grievance was filed with the UNC on August 5, 1983 and was pending at the time the complaint was filed with the Commission.

The record does not show that a formal ruling by the Commission was ever made as to the complaint's adequacy or whether the Commission assumed jurisdiction at that time. However, a letter to the UNC indicates that the complaint "was deficient in some manner and [was] not sufficient to require a response." The letter indicates the Commission was "in the process of clarifying the complaint or of making any appropriate determination regarding the Commission's jurisdiction in this matter," and would give the UNC notice of any further action. Again, the record does not show the outcome of this determination, that any ruling was made by the Commission with respect to its jurisdiction, or that Thomas was notified of any deficiency. Thomas filed an amended complaint with the Commission on January 19, 1984. (R. 134) It shows that the internal grievance was still pending on that date.

IND.CODE 22–9–1–3($o$) (1978) defines a complaint as any written grievance filed by a complainant with the Commission, and provides that

[n]o complaint shall be valid unless filed within ninety (90) days from the date of the occurrence of the alleged discriminatory practice, or from the date of the termination of a published and meaningful grievance procedure provided by a respondent employer, or labor union....

To be acceptable by the commission, a complaint shall be sufficiently complete so as to reflect properly the full name and address of the complainant; the name and address of the respondent against whom the complaint is made; the alleged discriminatory practice and a statement of particulars thereof; the date or dates and places of the alleged discriminatory practice, and if the alleged discriminatory practice is of a continuing nature, the dates between which said continuing acts of discrimination are alleged to have occurred; and a statement as to any other action, civil or criminal, instituted in any other form based upon the same grievance as is alleged in the complaint, together with a statement as to the status or disposition of such other action.

I.C. 22–9–1–3(*o* )

Whatever the Commission's reason for referring to the complaint as deficient, the legislature contemplated that complaints would be filed by laypersons and did not require formal pleading. While, in our view, Thomas's original complaint might have been more precise as to the dates of the alleged discriminatory practices, it comports with the statutory requirements for an acceptable complaint and was filed within a few days of the last discriminatory practice. Moreover, the written grievance adequately notified the Commission of the alleged discriminatory practices, enabling the Commission to begin its investigation. *See* I.C. 22–9–1–6.[1] Since the complaint met the statutory requisites, the statute must be construed broadly to effectuate its purposes, I.C. 22–9–1–2(e), and the Commission treated the complaint as timely, we

attach little significance to the informal notice and conclude Thomas's written complaint of August 15, 1983 was timely.

We note, however, that even if Thomas's first complaint was defective such as would prevent the Commission from assuming jurisdiction, the record establishes the second complaint was filed before the termination of the employer's grievance procedure. Accordingly, the 90–day period had not yet begun to run and the amended complaint was also timely filed.

## II.

■ The IDACS also contends it was improperly joined as a party since the Commission's own regulations prohibit the addition of a new party after the statutory period for filing a complaint has expired, unless the party had previously been joined under an improper name. The IDACS points out it was not named as a party in any form during the proper filing period.

We agree with the Commission and Thomas that the IDACS has waived this issue, having failed to present this basis for relief in its petition for judicial review and accompanying memorandum. The principle that new issues may not be raised on appeal is too well known to require citation.

## III.

■ Thomas argues the trial court erred in concluding the Commission's action was arbitrary and capricious, and in excess of statutory authority because her objections to the granting of the IDACS's motion to dismiss were untimely. Thomas maintains the statutory and regulatory framework of the Civil Rights Act requires a party to refrain from raising objections to prehearing orders until a hearing officer has issued recommended findings of fact and conclusions of law. Thomas's argument presupposes that the Commission has the authority to modify a prehearing order at any point in the proceedings and that an

---

**1.** In Title VII cases, a charge of employment discrimination is not the equivalent of a complaint initiating a lawsuit; rather, its function is to initiate the EEOC investigation. Consequently, it is not necessary for a Title VII complain-

ant to state facts sufficient to make out a prima facie case. *See e.g. Vaught v. R.R. Donnelley & Sons Co.* (7th Cir.1984), 745 F.2d 407, 411 and *E.E.O.C. v. Shell Oil Co.* (1984), 466 U.S. 54, 104 S.Ct. 1621, 80 L.Ed.2d 41.

administrative prehearing order cannot be a final order for purposes of judicial review.

As the IDACS notes, both the Civil Rights Act and the Commission's regulations are silent as to the effect of a dismissal occurring before a hearing on the merits of the complaint has been held. The Commission's regulations speak only to the question of who should rule upon a prehearing motion or petition, delegating authority to the chairman to act on the Commission's behalf. 910 IAC 1-2-9.

■ Nonetheless, there can be no doubt the legislature intended the Commission to be governed by the Administrative Adjudication Act. *See* I.C. 22-9-1-4(b) and I.C. 4-22-1-1. I.C. 4-22-1-26 permits an agency "to modify any order or determination during the time within which judicial review could be had thereof." The Act provides "a petition for [judicial] review shall be filed within fifteen (15) days after receipt of notice that such order, decision or determination is made"; unless a proceeding for review is commenced within this period, all rights of judicial review and of recourse to the courts terminate. I.C. 4-22-1-14.

The power to modify granted administrative agencies through I.C. 4-22-1-26 exists in addition to any other power to modify existing by virtue of statute or law. I.C. 4-22-1-26. This court has recognized an administrative agency possesses implied or inherent power to reconsider a final decision of the agency within a reasonable period of time after the decision is rendered. *See Dale Bland Trucking v. Calcar Quarries* (1981), Ind.App., 417 N.E.2d 1157. The time allowed by statute for review has been utilized as a guide. *Id* at 1160. Accordingly, we believe it useful to consider the agency's regulation 910 IAC 1-12-1(B) which addresses review of a final order on the merits and permits "an interested and affected person" to file objections to the entry of "such order" with the Commission

within 10 days thereafter or such additional time as granted by the Commission. The Commission's power to modify pursuant to this section is further circumscribed by the requirement of notice and a hearing before any order other than that recommended by the hearing officer may be adopted.

We recognize that the principle announced in *Dale Bland Trucking v. Calcar Quarries* applies to a *final* order or decision of an administrative agency while the express statutory authority to modify found in I.C. 4-22-1-26 appears to apply to *any* order or determination.[2] We find a consideration of both sources of authority are appropriate to our discussion here, however, because the granting of a motion to dismiss in an administrative adjudication is a final, appealable order for purposes of review. *See Anderson Lumber & Supply Co. v. Fletcher* (1950), 228 Ind. 383, 390, 89 N.E.2d 449 (dismissal by administrative agency equivalent to nonsuit; leaves parties in same situation as if no petition ever filed).

■ Thomas argues that the granting of IDACS's motion to dismiss was not an appealable final order because it disposed of less than all the issues raised by the complaint and was not signed by a majority of the Commission's members. *See* I.C. 4-22-1-7 and 910 IAC 1-12-2. Our supreme court has held, however, that an order may be final and appealable even if it does not dispose of all the issues as to all the parties, provided it disposes of a distinct and definite branch of the litigation. *Richards v. Crown Point Community School Corp.* (1971), 256 Ind. 347, 269 N.E. 2d 5, 7. Our courts have repeatedly held the granting of a motion to dismiss by a trial court meets this criterion. *See State ex rel. Clay Community Schools v. Parke Circuit Court* (1979), 271 Ind. 266, 392 N.E.2d 804, 805; *Parrett v. Lebamoff* (1979), 179 Ind.App. 25, 383 N.E.2d 1107.

■ Moreover, assuming, as Thomas argues, prehearing rulings made by the chair-

2. *But cf, Downing v. Board of Zoning Appeals* (1971), 149 Ind.App. 687, 274 N.E.2d 542 and *State ex rel. Calumet National Bank v. McCord* (1963), 243 Ind. 626, 189 N.E.2d 583 (general language in I.C. 4-22-1-24 (1971) allowing review of "any order or determination" relates only to a final decision).

 

man must be ratified by the ultimate authority, the requirement of finality does not afford an administrative body the right to delay indefinitely when all material facts bearing upon the decision have been submitted. *Indiana State Highway Commission v. Zehner* (1977), 174 Ind.App. 176, 366 N.E. 697, 700. Implied within the power to act is also the duty to act within a reasonable time. *Indiana Alcoholic Beverage Commission v. State* (1977), 173 Ind. App. 636, 365 N.E.2d 1225, 1229, modified on other grounds, 269 Ind. 48, 379 N.E.2d 140.

Accordingly, with the provisions of I.C. 4–22–1–14 and the Commission's regulation 910 IAC 1–12–1 as a guide, we conclude the Commission acted arbitrarily and capriciously, and beyond the scope of its authority when it reopened the judgment of its chairman nearly eighteen months after the decision was rendered. The trial court's judgment reversing the Indiana Civil Rights Commission is affirmed. This matter is remanded to the Commission for proceedings in conformity with the law as defined by the judgment and decision of this court.

JUDGMENT AFFIRMED.

NEAL and MILLER, JJ., concur.