The **HIDDEN VALLEY LAKE PROPERTY OWNERS ASSOCIATION, on behalf of Lot Owners and Lot Purchasers and Customers of HVL Utilities, Inc., and Members of the Board of Directors of the Association Consisting of Robert Arlinghaus, Harold Higson, Beverly Smith and Thomas Spraul, as Directors of the Association and in their individual capacity as Lot Owners and Customers of HVL Utilities, Inc., Appellants (Intervenors below),**

v.

**HVL UTILITIES, INC., Appellee (Petitioner below),**

**Public Service Commission of Indiana, Appellee,**

**Larry J. Wallace, William B. Powers and James Plaskett, as Members of the Public Service Commission of Indiana, Appellee.**

No. 2–775A177.

Court of Appeals of Indiana, Fourth District.

Aug. 19, 1980.

Rehearing Denied Oct. 23, 1980.
See 411 N.E.2d 262.

Paul Hirsch, Haymaker, Hirsch & Fink, Indianapolis, for appellants.

Leslie Duvall, Sparrenberger, Duval, Tabbert & Lalley, Indianapolis, for appellees.

CHIPMAN, Judge.

The appellee, HVL Utilities, Inc. (HVL Utilities) petitioned the Public Service Commission (PSC) for a Certificate of Public Convenience and Necessity to provide water service to a portion of Dearborn County known as Hidden Valley Lake Subdivision. The Hidden Valley Lake Property Owners Association (Intervenors) petitioned the PSC to allow it to intervene and the petition was granted. A hearing was held on HVL Utilities' petition and the PSC subsequently granted the certificate to HVL Utilities.

On appeal the Intervenors challenge the PSC's order. We reverse.

The Intervenors have raised the following issue:

Whether the PSC erred by not making Hidden Valley Lake, Inc. (HVL Developer) a party to the proceeding and by not mak-

ing a specific finding of fact as to whether it is a public utility under IC 8–1–2–1.[1]

Several other issues have been raised by the Intervenors but we need not discuss them in light of our decision to reverse.

## FACTS

In 1969 HVL Developer acquired a large piece of property in Dearborn County and began to develop a 3,000 lot subdivision. By November of 1973 HVL Developer had sold approximately 2,000 lots. The following agreement was contained in the sale contract for each lot:

"Grantee for himself, his heirs, executors or assigns, agrees that as a consideration of sale, and as a condition precedent to the installation of water and sewer mains adjacent to the lots as herein described, which said mains are to be located by Hidden Valley Lake, Inc., its successors or assigns that the Grantee(s) jointly and severally promise to pay to the Grantor or its assigns a minimum of $5.00 per month water and $3.00 per month sewer, payable annually in advance, so long as water and/or sewer service is available. Payment thereof for the year or part thereof shall be due of the first day of the month immediately following the availability of water and/or sewer service to Grantee, his heirs, executors or assigns, whether or not an actual water and/or sewer service connection is then in existence to said Grantee, his heirs, executors or assigns, for the period beginning with said month and ending on March 31st subsequent thereto, and thereafter due and payable in the amount of $60.00 for water service in advance on the first day of April of each year, and $36.00 per year sewer service. The foregoing charge is for the availability of water and/or sewer service and is not a contribution in aid of construction. The Grantor, its successors or assigns, upon receiving a written re-

quest and $195.00 will install a water service connection from the main to the Grantee's lot line, and thereafter Grantee, his heirs, executors or assigns shall pay a minimum water service fee, whether or not used, of $5.00 per month in lieu of and in the same manner as the water availability charge.

The Grantor, its successors or assigns, upon receiving a written request and $395.00 will install a sewer service connection from the main to the Grantee's lot line, and thereafter Grantee, his heirs, executors or assigns shall pay a minimum sewer service fee, whether or not used, of $3.00 per month in lieu of and in the same manner as the sewer availability charge.

The aforesaid charges are subject to change by the Public Service Commission of Indiana."

.      .      .      .      .

Pursuant to the agreement, HVL Developer began and continued to install water and sewer lines in the subdivision. Periodically HVL Developer, would transfer ownership of newly installed water lines to HVL Utilities, a wholly owned subsidiary of HVL Developer. Thereafter, if lot purchasers had their property connected to the water lines, they would cease paying the $5.00 per month water availability charge to HVL Developer and would begin paying a $5.00 per month minimum water service fee to the subsidiary HVL Utilities.

For the purpose of determining rates, which was done prior to the application for the certificate, HVL Utilities valued the $234,000 water distribution system it had received free of charge from HVL Developer at zero. This evaluation was arrived at in recognition of the fact the donated property represented a contribution in aid of construction and not property purchased by HVL Utilities' investors. The $5.00 per month water availability charge paid to the parent HVL Developer was not included as

---

1. IC 8–1–2–1 reads in part:

"The term 'public utility' . . . shall mean . . . every corporation . . . their lessees . . . that . . . own, operate, manage or control any . . .

equipment . . . for the . . . delivery . . . of . . . water . . . or for the collection, treatment, purification and disposal in a sanitary manner of liquid and solid waste, (and) sewage . . . ."

revenues of the subsidiary HVL Utilities in determining the latter's rates.

In August of 1973 HVL Utilities applied for a Certificate of Public Convenience and Necessity from the PSC. In November the Intervenors, which included both those paying the water service fee and those paying the water availability fee, petitioned the PSC to allow them to intervene, to deny HVL Utilities' application, to make HVL Developer a party to the application proceedings, to grant the certificate to HVL Developer, and to require HVL Developer to include the receipts from the water availability charge in determining its rate structure.

The evidence presented to the PSC showed some degree of intermingling between the parent and the subsidiary corporations with regard to providing water service to Hidden Valley Lake Subdivision. HVL Utilities purchases its water for resale from the Tri-Township Water Corporation, an FHA rural water company. James Rupel, President of both the parent HVL Developer and the subsidiary HVL Utilities, testified the membership in the Tri-Township Water Corporation was in the name of HVL Developer and not in the name of HVL Utilities. The easements for utilities reserved in HVL Developer's deeds remained in its name and were not transferred to HVL Utilities. When a lot owner contacted HVL Utilities and requested a water hook up, HVL Utilities billed the lot owner for the hook up and sub-contracted the work to HVL Developer. In addition, although it is not totally clear from the record, it appears HVL Utilities has added a paragraph to its rules and regulations, which are filed with the PSC and distributed to its customers, explaining HVL Developer's availability charge and how it is to be paid.

The evidence also showed thirty-five of the lots had been connected to the water lines and in the near future the utility would have the capacity to serve 650 customers. According to Mr. Rupel, President of both HVL Developer and HVL Utilities, there were approximately 2,000 lot owners

paying the $5.00 per month availability charge. This represents an income of approximately $120,000 per year to the HVL Developer which is not included in the subsidiary HVL Utilities' ratebase ($5.00 per month times twelve months times 2,000 lot owners).

On June 14, 1974, the PSC rendered its split decision granting HVL Utilities' application for the certificate and made the following findings:

"3. That the evidence in this cause does not establish whether or not Hidden Valley Lake, Inc., is a 'public utility' within the meaning of I. C. 1971 8–1–2–1. We therefore can not make a finding that Hidden Valley Lake, Inc., is a public utility and therefore cannot consider the question of whether the availability charge and connection fee provided for in the sale contracts and/or deeds issued by Hidden Valley Lake, Inc., are within our jurisdiction pursuant to I. C. 1971 8–1–2–38, 42 and 44.

4. That we do not express any opinion on the availability charge and water connection fee provided by the Hidden Valley Lake, Inc., sale contracts and/or deeds with respect to the Intervenors and other landowners in the affected area. Absent a finding that these charges are rates within the meaning of I. C. 1971 8–1–2–38 of a public utility as defined in I. C. 1971 8–1–2–1 (a finding which we cannot make on the basis of the evidence in the record of this cause), any solution of these questions concerning the contractual obligation and limitations arising from said contracts and/or deeds between Hidden Valley Lake, Inc., and the Intervenors are best left to a court of competent jurisdiction.

5. That the relief sought by the Intervenors in their petition to intervene should be denied and it will be so ordered.

6. That the Applicant herein is an Indiana corporation with lawful power and authority to install, operate and maintain a water utility system and to apply for and hold a certificate of convenience and necessity to render such service; and that

Applicant has the power and authority to render said service within the rural area of Dearborn County, Indiana, more particularly described in Appendix A, attached hereto and made a part hereof.

7. That Applicant is operating a water utility service as a public utility and is subject to the jurisdiction of this Commission.

8. That all of the capital investment in the initial plan of Applicant's water utility distribution system in the amount of $234,000.00 has been contributed by Hidden Valley Lake, Inc., the development company, and that all of said contributed plant is now owned by the Applicant, HVL Utilities, Inc.

9. That Applicant, HVL Utilities, Inc., will render water distribution service to a rural real estate subdivision known as Hidden Valley Lake; that the area Applicant proposes to serve is outside the limits of any municipality and of any area now receiving service; that there is no evidence indicating that any other individual, corporation, or municipality is in a position to render water utility service to the area for which certification is sought herein; and that public convenience and necessity require the rendering of such water utility service in the area which Applicant seeks to serve.

Commissioner Powers dissented from the majority decision. He differed with his fellow Commissioners on the subject matter jurisdiction issue and argued the PSC was the proper forum for the preliminary determination of the status of HVL Developer in relation to HVL Utilities and to the lot owners in Hidden Valley Lake Subdivision.

### THE COMMISSION'S FAILURE TO JOIN HVL DEVELOPER AND TO MAKE SPECIFIC FINDINGS OF FACTS

The Intervenors argue the PSC should have made HVL Developer a party to the application proceedings and should have made a specific finding of fact based on substantial evidence as to whether HVL Developer is a public utility under IC 8–1–2–1. Based on the evidence presented in this case and the findings made by the PSC, we agree with the Intervenors.

██ The PSC's decision must contain specific findings of fact on all of the factual determinations material to its ultimate conclusions. *L. S. Ayres & Co. v. Indianapolis Power & Light Company*, (1976) Ind.App., 351 N.E.2d 814. If this statement of law is interpreted literally, it seems to say the PSC need not make specific findings on factual determinations it considers immaterial to its ultimate conclusions. This interpretation is not entirely correct. While there is no case law or statutory authority directly on point, it seems only logical and judicially fair that the PSC must in one way or another address each issue raised by the parties appearing before it. If the issue raised is material to the ultimate conclusions, then a specific finding of fact based on substantial evidence must be made concerning that issue. On the other hand, if the PSC decides an issue is immaterial, it must make a specific finding as to the immateriality and give its reasons for arriving at that conclusion.

██ In dealing with the issue of HVL Developer's status the PSC must choose among one of the three factual findings below:

1. HVL Developer is a public utility.

2. HVL Developer is not a public utility.

3. HVL Developer's public utility status is immaterial with regard to HVL Utilities' application for a certificate.

The PSC chose instead to find it did not have sufficient information to decide between options 1 and 2. This alternative is not available to the PSC.

If this case involved the setting of rates, clearly the issue would be material and would have to be decided by the PSC. But in this case the PSC is awarding a Certificate of Public Convenience and Necessity and it is unclear whether the issue is material. IC 8–1–2–86 negatively implies a certificate should be issued unless there is in operation another utility providing the

same services under a license, franchise or permit.[2]

In paragraph 9 of its order, the PSC found:

"[T]here is no evidence indicating that any other individual corporation, or municipality is in a position to render water utility service to the area for which certification is sought herein: and that public convenience and necessity require the rendering of such water utility service in the area which Applicant seeks to serve."

From this finding, it appears HVL Developer's utility status is immaterial to the application proceedings since HVL Developer is not providing any competing services to the area. If on remand the PSC determines this to be the case, then the PSC needs to make a specific finding to that effect giving its reasons based on substantial evidence. If the PSC determines HVL Developer's utility status is material, then a specific finding must be made on that issue.

If the PSC finds HVL Developer's utility status is material, and proceeds to determine that HVL Developer is a public utility, then depending on its materiality the PSC may be required to address the role, if any, the water availability charge collected by HVL Developer should have in the setting of HVL Utilities' rates and whether the availability charge should be considered a contribution in aid of construction.

■ The PSC considers this issue to be one of a contractual obligation between HVL Developer and the Intervenors and is best left to a court of competent jurisdiction to resolve. We disagree. Although this case clearly involves the issue of a contractual obligation, it also may involve actions of a questionable nature by a public utility. We consider this latter concern to be the more important and overriding of the two and feel it should be decided by the PSC rather than trial courts.

Although the Supreme Court in *Public Service Commission v. Girton*, (1920) 189 Ind. 627, 128 N.E. 690 was operating under a factual setting different from ours, its reasoning is still applicable here:

"We know of no authority holding that a contract between an individual and a person or corporation operating a 'public utility' can take away or affect the police power of the state to regulate and control the relations between such person or corporation and the general public, including the regulation of charges. . . . [I]t is not possible for a private citizen, by his contract with other citizens or private corporations engaged in the performance of a public service, to take away, abridge, or limit the power of the state to regulate and fix the charges which may be exacted from the public for such service."

*Id.* at 634, 128 N.E. at 692. The resolution of the questions involved in this issue, whether HVL Developer is a public utility, whether the subsidiary is acting as an agent of the parent corporation rather than as a separate entity, whether the water availability charge is actually a contribution in aid of construction, etc., is best left to the factfinding body which has the expertise in the field of public utilities.

2. "No license, permit or franchise shall be granted to any person, copartnership or corporation to own, operate, manage or control any plant or equipment of any public utility in any municipality where there is in operation a public utility engaged in similar service under a license, franchise or permit without first securing from the commission a declaration, after a public hearing, of all parties(,) interested, that public convenience and necessity require such second public utility; Provided, That any municipality may purchase, condemn, and operate, or construct and operate, a utility in such municipality for the purpose of transportation, production, transmission, delivery, sale and furnishing of heat, light, water and/or power to such municipality, and/or the public in and within six [6] miles of the limits of such municipality, without the consent of said commission, although there is operating in said municipality a public utility engaged in a similar service under a license, franchise or indeterminate permit.

Any existing permit, license or franchise which shall contain any term whatsoever interfering with the existence of a second public utility is hereby declared to be against public policy and is hereby amended in such manner as to permit a municipality to grant a license, franchise or permit for the operation of such second public utility pursuant to the provisions of this act."

Any contractual disagreements remaining after the PSC has made its findings may then be more easily resolved by a trial court since the court will have the assistance of the PSC'S previous findings in making its decision.

■ The Intervenors requested that HVL Developer be made a party to the application proceedings. The PSC denied their request for an undisclosed reason and decided it had insufficient evidence to determine whether HVL Developer was a public utility. In doing so, the PSC erred in one of two ways. If the PSC believed it possessed the authority to compel HVL Developer to appear before it for investigative purposes and chose not to exercise that authority, it erred by failing to make a specific finding of fact as to why the Intervenor's request was denied. If the PSC believed it did not possess such authority, it was mistaken.

■ We believe the PSC does possess the authority to compel a business to appear before it, if certain conditions are met, despite the lack of a specific grant of this power from the PSC's enabling statutes. In making this statement we are mindful of the words of the court in *Town of Merrillville v. Lincoln Gardens Utilities Company, Inc.*, (1976) Ind.App., 351 N.E.2d 914, 919:

"[T]he Public Service Commission possesses only that power and authority granted to it by statute. Unlike a Court, it cannot resort to the common law for authority to act:

'When the power of the Public Service Commission comes in question it must be recognized it is a statutory board which derives its power and authority solely from the statute, and unless a grant of power and authority can be found in the statute it must be concluded there is none.'" (citations omitted)

We are also mindful of the words of the court in *Highland Realty, Inc. v. Indianapolis Airport Authority*, (1979) Ind.App., 395 N.E.2d 1259, 1266: "Our primary objective in construing statutes is to ascertain and give effect to the legislative intent." (citations omitted)

It is inconceivable that the legislature intended to give the PSC primary jurisdiction over public utilities and yet did not intend to empower the PSC of compel a business to appear before it for the purpose of determining whether that business is a public utility. If the language from *Town of Merrillville, supra*, is taken literally, the PSC would not only be without power to compel a business's appearance before it, it would also be without power to request a trial court to determine whether a business is a public utility subject to its authority since its enabling legislation does not provide the latter power either. We do not believe the legislature meant to give the PSC jurisdiction only over those who chose to submit themselves to the PSC'S jurisdiction.

This reasoning is consistent with the decision of the Indiana Supreme Court in *Public Service Commission v. Panhandle Eastern Pipeline Co.*, (1947) 224 Ind. 662, 71 N.E.2d 117, *aff'd*, 332 U.S. 507, 68 S.Ct. 190, 92 L.Ed. 128 (1947). In that case the PSC began an investigation of the affairs of an interstate pipeline company. The PSC ordered the pipeline company to file its rates, tariffs, rules and regulations with the PSC. The pipeline company objected contending the PSC had neither authority nor jurisdiction over it based on the commerce clause and further contended it was not a public utility. By upholding the PSC's order, the Supreme Court impliedly held the PSC did have the authority to force a business to appear before it if the PSC determines that business is a public utility. It only follows naturally that the PSC would also have the authority to bring a business before it to obtain sufficient evidence to determine if the business is a public utility.

In a case quite similar to ours, a Pennsylvania court reached a similar result. In *The Sayre Land Company v. Pennsylvania Public Utility Commission*, (1959) 21 Pa.D. & C.2d 469, 27 PUR3d 502, the land developer organized a second company to act as the water company. The Public Utility Commission initiated proceedings against

 

the developer alleging it was a public utility due to its ownership of facilities used for public service such as water mains, hydrants, and pumps. The Public Utility Commission found the Sayre Water Company was actually an agent of the Sayre Land Company, they shared common directors, and the water company existed only to serve the interests of the land company. In upholding the Public Utility Commission's jurisdiction and authority over the land company the court said:

> "A company which is in fact rendering service as a public utility cannot escape regulation on the ground that it has no charter right to render such service. A company which is defined by the legislature itself to be a public utility cannot point to the provision of its charter to defeat that definition."

27 PUR3d at 514.

The Indiana legislature has defined public utility as:

> "[E]very corporation, company, individual, association of individuals, their lessees, trustees, or receivers appointed by any court whatsoever, that now or hereafter may own, operate, manage or control any street railway or interurban railway or any plant or equipment within the state for the conveyance of telegraph or telephone messages, or for the production, transmission, delivery or furnishing of heat, light, water or power, or for the collection, treatment, purification and disposal in a sanitary manner of liquid and solid waste, sewage, night soil and industrial waste, but said term shall not include a municipality that may now or hereafter acquire, own, or operate any of the foregoing facilities." [3]

Herein lies a limitation on the PSC's authority to compel a business to appear before it. The business must be providing one of the utility services listed and the service must be provided publicly.

Accordingly, we hold the PSC has the authority and the duty, when requested under appropriate circumstances, to require any business holding itself out to be a pub-

lic utility, to be under the PSC's jurisdiction, or that is sufficiently alleged to be a public utility, to appear before it for the purpose of determining whether the business is a public utility.

In this case the Intervenors have alleged HVL Developer is acting as a public utility and HVL Developer in the restrictions contained in the sales contract appears to be holding itself out as being subject to the jurisdiction of the PSC. If on remand the PSC determines HVL Developer's public utility status is material to its ultimate decision on HVL Utilities' certificate application, the PSC will be required to specifically find that HVL Developer is or is not a public utility.

This case is remanded to the Public Service Commission for further action consistent with this opinion.

YOUNG, P. J. and MILLER, J., concur.