UNITED STATES STEEL CORPORATION, Appellant (Plaintiff Below),

v.

NORTHERN INDIANA PUBLIC SERVICE COMPANY, INC.; Public Service Commission of the State of Indiana; and the State of Indiana, Appellees (Defendants Below),

and

Office of the Utility Consumer Counselor, Appellee (Intervenor-Defendant Below).

No. 2–385 A 80.

Court of Appeals of Indiana, Fourth District.

Dec. 23, 1985.

---

John F. Wickes, Jr., Lynne D. Lidke, Scopelitis & Garvin, Indianapolis, Wayne L. Emery, Rafael Caminero, U.S. Steel Corp., Pittsburgh, Pa., for appellant.

Linley E. Pearson, Atty. Gen., Robert K. Johnson, Deputy Atty. Gen., Indianapolis, for appellee Public Service Com'n of Indiana.

Frederick F. Eichhorn, Jr., David C. Jensen, James K. Morse, Eichhorn, Eichhorn & Link, Hammond, for appellee Northern Indiana Public Service Co.

CONOVER, Judge.

All appellees petition for rehearing. While most issues they raise were fully covered in our original opinion, Ind.App., 482 N.E.2d 501, we will expand our discussion on two points raised by the Public Service Commission of Indiana (PSCI). It

respectfully asserts our opinion is in error because

1. when the project is completed, United States Steel Corporation (U.S. Steel) will be a "public utility" under Ind.Code 8–1–2–1's amended definition of that term, and

2. we failed to follow the ruling precedent of *Panhandle Eastern* and *HVL Utilities* [1] by determining the trial court has exclusive jurisdiction of declaratory judgment actions of this nature rather than the PSCI.

1. *U.S. Steel Not "Public Utility" under Public Service Commission Act.*

■ Prior to 1955, the Public Service Commission (PSC) Act defined a "public utility" as follows:

[T]he term "public utility" as used in this act shall mean and embrace every corporation, ... [or] individual, ... that now or hereafter may own, ... any equipment within the state for the ... transmission ... of ..., water or power, ... *directly or indirectly to or for the public,* ... (Emphasis supplied).

Burns Annot.Statutes § 54–105. That year, the Legislature broadened this definition to include sewage or waste treatment facilities not municipally owned or controlled. The words "directly or indirectly to or for the public" do not appear in the amended definition. However, that amendment left intact the definitions of "service" and "utility" appearing in the same section, even though they included the words "to the use and accomodation of the public" and "either directly or indirectly to the public," respectively. The PSCI in effect argues we should ignore this patent anomaly and engraft public utility status upon U.S. Steel even though no electricity mixed and transmitted by its proposed facitlities will be distributed directly or indirectly to the public. The absurd result of such an application is readily demonstrable.

If the Legislature had intended the amended "public utility" definition to be literally applied, any person or corporation owning any facility for the transmission of electric power or water would be a "public utility" whether or not such commodities were to be publicly or privately consumed. Thus, any homeowner transmitting water from house to garden through his garden hose, or electric power to hedge trimmer through his extension cord would be a "public utility" subject to PSCI jurisdiction. We will not presume such a patent absurdity was intended by the Legislature. *Chaffin v. Nicosia* (1974), 261 Ind. 698, 310 N.E.2d 867, 870; *Lake County Beverage Co., Inc. v. 21st Amendment* (1982), Ind. App., 441 N.E.2d 1008, 1014. Clearly, the words "directly or indirectly to or for the public" were inadvertently omitted from the 1955 amendment. Several other well-recognized rules of statutory construction also apply here.

A. *Subsequent Legislation Rule*

■ The later-enacted of two statutes dealing with the same subject matter controls as to any conflicting provisions. *State ex rel. Ind. Bd. of Finance v. Marion County Superior Court, Civil Div.* (1979), 272 Ind. 47, 396 N.E.2d 340, 344; *State ex rel. Sendak v. Marion County Superior Court, Room No. 2* (1978), 268 Ind. 3, 373 N.E.2d 145, 148–149. In 1969, fourteen years after the "public utility" definition was amended, the Legislature enacted the Public Utility Fees Act, *cf.* I.C. 8–1–6–1, et seq. Its definitions section reads in part

The term "public utility", as used in this chapter, shall mean and embrace every corporation, ..., [or] individual, that ..., may own, ... any ... equipment within the state for the ..., transmission ... of ..., water, or power, ... *for service directly or indirectly to the public,* ... (Emphasis supplied).

I.C. 8–1–6–3. Statutes in *pari materia* are to be construed with reference to each other so that effect may be given to all the provisions of each to produce a harmonious

**1.** *Public Service Commission v. Panhandle Eastern Pipeline Co.* (1947), 224 Ind. 662, 71 N.E.2d 117, aff'd. 332 U.S. 507, 68 S.Ct. 190, 92 L.Ed. 128; *Hidden Valley Lake Property Owners Ass'n. v. HVL Utilities, Inc.* (1980), Ind.App., 408 N.E.2d 622.

system, if possible. *Wright v. Gettinger* (1981), Ind., 428 N.E.2d 1212, 1219; *Matter of Lemond* (1980), 274 Ind. 505, 413 N.E.2d 228, 245, n. 15; *Johnson v. LaPorte Bank & Trust Co.* (1984), Ind.App., 470 N.E.2d 350, 354–355; *Ind. State Hw'y. Com'n. v. Bates & Rogers Constr., Inc.* (1983), Ind. App., 448 N.E.2d 321, 323–324.

■ When necessary, courts must add words palpably omitted from a statute. As stated by Johnson, Circuit Judge

The question, as in any case of statutory construction, is one of soundly seeking and tolerantly effectuating convincing legislative intention. (citing cases) In the discovery of [legislative] intention, no invariable rule is controlling. (citing cases) The language of an act is, of course, the fundamental guide to legislative meaning and purpose, but it is the language of the act as a whole that is to be read and not the words of a section or provision in isolation, for "courts will construe the details of an act in conformity with its dominating general purpose, will read text in the light of context and will interpret the text so far as the meaning of the words fairly permits so as to carry out in particular cases the generally expressed legislative policy." (citing cases) And so, while courts are and should be cautious about adding words as such to a statute generally, they will not hesitate to read into the sense of some section or provision a qualifying or expanding expression plainly implied by the general context of the act, which has been palpably omitted and which is necessary to prevent the legislative purpose from failing in one of its material aspects. (citing cases).

*Elizabeth Arden Sales Corp. v. Gus Blass Co.* (1945, C.A. 8) 150 F.2d 988, 992–993.

■ As we are required to do in such cases, we here must read the omitted words back into the definition of "public utility" by construction

(a) to make the Act workable,

(b) to give it complete sense,

(c) to make it express the true intent of the Legislature, and

(d) to avoid an absurd and unintended result.

*Dague v. Piper Aircraft Corp.* (1981), 275 Ind. 520, 418 N.E.2d 207, 211; *Woerner v. City of Indianapolis* (1961), 242 Ind. 253, 177 N.E.2d 34, 37–38, cert. den'd. 368 U.S. 989, 82 S.Ct. 605, 7 L.Ed.2d 526; *Town of Homecroft v. Macbeth* (1958), 238 Ind. 57, 148 N.E.2d 563, 567; *State ex rel. 1625 East Washington Realty Co. v. Markey* (1937), 212 Ind. 59, 7 N.E.2d 989, 993; *Zoercher v. Indiana Associated Telephone Corp.* (1937), 211 Ind. 447, 7 N.E.2d 282, 285. Thus, by definition U.S. Steel will not be a "public utility" within the meaning of the Act because no power it transmits will be furnished "either directly or indirectly" to the public.

Another rule of statutory construction also compels us to the same conclusion.

### B. Statutes to be Construed as Constitutional

■ Any attempt to impress public utility status upon private property not dedicated to public use constitutes a taking thereof for public use without just compensation in violation of the Fourteenth Amendment. *Producers Transportation Co. v. Railroad Commission* (1920), 251 U.S. 228, 230–231, 40 S.Ct. 131, 132, 64 L.Ed. 239; *see also Michigan Public Utilities Commission v. Duke* (1924), 266 U.S. 570, 45 S.Ct. 191, 69 L.Ed. 445; *Allen v. Railroad Commission* (1918), 179 Cal. 68, 175 P. 466; *Malone v. Custom Manner* (1956), 4 Misc.2d 976, 158 N.Y.S.2d 241; and *Aberdeen Cable TV Service, Inc. v. City of Aberdeen* (1970), 85 S.D. 57, 176 N.W.2d 738. When a statute may be construed to support its constitutionality, such construction must be adopted. *Miller v. State* (1983), Ind.App., 449 N.E.2d 1119, 1121. The PSC Act passes constitutional muster in this regard only if the omitted language is read back into the amended "public utility" definition.

### 2. Panhandle Eastern and HVL Utilities Not Precedent

#### A. Panhandle Eastern

■ Regarding *Public Service Commission v. Panhandle Eastern Pipeline Co.*

(1947), 224 Ind. 662, 71 N.E.2d 117, aff'd. 332 U.S. 507, 68 S.Ct. 190, 92 L.Ed. 128, the PSCI argues

> [In *Panhandle Eastern* ], the Indiana Supreme Court upheld the PSC's authority to regulate natural gas pipelines that served large industrial customers. As the HVL Court concluded, this implicitly includes the power to determine an entity's status as a public utility.

(PSCI's Brief on Petition to Rehear, p. 14). While the PSCI has the authority to bring a business before it to determine if it is a public utility under certain circumstances, the circumstances warranting such action by the PSCI are not present in the case before us. U.S. Steel here seeks a declaratory judgment determining its rights and status as a public utility if its project is completed. In *Panhandle Eastern*, the pipeline company admitted on the record it was a public utility. As the court noted

> The bottom question on this phase of the case is whether the appellee is furnishing gas in Indiana directly or indirectly to or for the public. *Admittedly* it is *selling gas in Indiana indirectly to and for the public* through distributing companies and that makes it a public utility under the Indiana statute, subject to regulation and control by the Indiana Public Service Commission. *Also admittedly it is selling and proposing to sell gas directly to consumers within the state....* (Emphasis supplied).

*Panhandle Eastern*, 71 N.E.2d at 127. Subject matter jurisdiction was not at issue in *Panhandle Eastern*. U.S. Steel makes no such admission here. On the contrary, it makes an opposite contention. *Panhandle Eastern* is not precedent for the PSCI's assertion it has exclusive jurisdiction to determine any entity's status at any time.

### B. *HVL Utilities*

The PSCI next cites our decision in *Hidden Valley Lake Property Owners Ass'n. v. HVL Utilities, Inc.* (1980), Ind.App., 408 N.E.2d 622, in support of its claim of exclusive jurisdiction to determine whether or not any entity is a public utility.

We first note, subject matter jurisdiction was not at issue in *HVL Utilities* either, nor could it be. The PSCI has exclusive jurisdiction to grant territorial permits to public utilities, *cf. Williams v. Citizens Gas Co.* (1934), 206 Ind. 448, 188 N.E. 212, 215. The issue in *HVL Utilities* was whether the PSCI should issue a certificate of convenience and necessity to petitioner HVL Utilities to furnish the subdivision's lot owners sewer and water service. The Intervenors insisted Petitioner's parent corporation HVL Developer actually was furnishing such service, not its wholly-owned subsidiary, Petitioner. This case merely holds after its exclusive jurisdiction as to the issuance of such certificates had been properly invoked by the filing of HVL Utilities's petition, the PSCI, as *factfinder*, had the power to require HVL Developer to appear before it, hear evidence, and then resolve that dispute as one of several factual issues in the matter before it. Specifically, we said

> Accordingly, we hold the PSC has the authority and the duty, when requested under appropriate circumstances, to require any business ... [which] is sufficiently alleged to be a public utility, to appear before it for the purpose of determining whether the business is a public utility.

*HVL Utilities*, 408 N.E.2d at 629. The PSCI in cases properly pending before it must find the facts specifically enough to enable the reviewing court to review PSCI decisions intelligently. *General Telephone Co. of Indiana v. Public Service Com'n.* (1958), 238 Ind. 646, 150 N.E.2d 891, 895, *reh. den'd.* 238 Ind. 646, 154 N.E.2d 372; *Bd. of Directors for Public Utilities of City of Indianapolis v. Office of Utility Consumer Counselor* (1985), Ind.App., 473 N.E.2d 1043, 1047.

The PSCI is a body possessing only delegated powers. Unless power and authority to act is found in a statute, it must be concluded there is none. *Citizens Action Coalition of Indiana, Inc. v. Northern Indiana Public Service Co.* (1985), Ind., 485 N.E.2d 610, 612. The

PSCI has no statutory subject matter jurisdiction to issue declaratory judgments. Its basic function is factfinding. *Kentucky-Indiana Municipal Power Ass'n. v. Public Service Co.* (1979), 181 Ind.App. 639, 393 N.E.2d 776, 780–781. *HVL Utilities* is not authority to contrary.

### 3. *Premature Fact Allegations*

Northern Indiana Public Service Company now asks us to judicially notice a FERC Form No. 1, filed by Commonwealth Edison Company of Indiana, Inc. (Commonwealth of Indiana) in PSCI Cause No. 36093. This form states that corporation sells its entire output to "Commonwealth Edison Company" its controlling corporation with offices in Chicago, Illinois. An accompanying PSCI order confirms that statement. While we may take such notice, *cf. Roeschlein v. Thomas* (1972), 258 Ind. 16, 280 N.E.2d 581, 584; *Wayne Township v. Lutheran Hospital* (1974), 160 Ind.App. 427, 312 N.E.2d 120, n. 2; *Merriman v. Standard Grocery Co.* (1968), 143 Ind.App. 654, 242 N.E.2d 128, 130, the existence of a separate corporation bearing a similar name has no effect upon the question of the trial court's jurisdiction in this case, the only issue we have decided to date.

Further, we rendered our original opinion "accept[ing] the facts alleged in the complaint as true" because (a) "[n]o fact-sensitive supporting materials were filed," and (b) "the facts are not in dispute[.]" *U.S. Steel Corp. v. Northern Indiana Public Service Co., Inc.* (1985), Ind.App., 482 N.E.2d 501, 503. This statement was based, in part, upon NIPSCO's factual recital "Commonwealth Edison Company of Illinois ('Commonwealth') furnishes electricity service to U.S. Steel at South Works." (NIPSCO Appellee's Brief, p. 2). Any contrary evidence it may have in this regard may be presented to the trial court on remand.

 Finally, NIPSCO decrys U.S. Steel's proposal as nothing more than an elaborate "scheme" designed to substan-

tially or entirely eliminate it as the lawful supplier of electricity to Gary Works, i.e., U.S. Steel will purchase substantially all its power requirements for both plants from Commonwealth to avoid paying NIPSCO's electric rates, denominated by the Utility Consumer Counselor (UCC) as being "among the highest in the country." (UCC's Brief on Petition, p. 4). The UCC also makes the same prediction. He says

> It is clear that the transmission lines will be a one-way street, from South Works to Gary Works. This use of Commonwealth electricity in the NIPSCO service area will displace a large segment of the NIPSCO load.
>
> It is inevitable that the partial or complete loss of a large industrial customer will adversely impact the ratepayers of NIPSCO or any other local distribution company....

While such an issue is not before us, it may be appropriate to note for the trial court's guidance on remand Indiana's public policy is to grant monopolies to public utilities subject to State regulation. In this regard, we recently said

> As have all other states, Indiana has developed a comprehensive scheme for the regulation of public utilities to ensure that the public is provided reasonable and adequate utility service at reasonable rates, while at the same time ensuring the utilities' investors a reasonable rate of return on their investment. State regulation of public utilities supplies the "missing element of competition which protects the public from excessive charges in competitive businesses."

*Illinois-Indiana Cable Television Ass'n., Inc. v. P.S.C.I.* (1981), Ind.App., 427 N.E.2d 1100, 1106. *See, also, Citizens Action Coalition of Indiana, Inc.*, at 614–15. Thus, a substantial disruption of any Indiana public utility's ratebase due to an unlawful scheme or combination to avoid payment of its approved rates would be contrary to this State's public policy.[2] If NIPSCO has

---

**2.** It is a criminal offense to avoid lawful charges for electric on other utility service. In this

regard, IND.CODE 35–43–5–3 provides in part:

evidence U.S. Steel's proposal is merely a "scheme" to defeat the public utility laws of Indiana, it may present the same to the trial court upon remand by way of counterclaim for a declaration of its rights and status in such situation.

All petitions for rehearing are denied.

YOUNG, P.J., and MILLER, J., concur.

Sec. 3(a) A person who:

(5) with intent to defraud another person furnishing electricity ..., or any other utility service, avoids a lawful charge for that service ... by scheme or device ... commits deception, a Class A misdemeanor.