OFFICE OF UTILITY CONSUMER COUNSELOR, Appellant (Petitioner Below),

v.

NORTHERN INDIANA PUBLIC SERVICE COMPANY, American Maize-Products Company, the Dalton Foundries, Inc., Inland Steel Company, LTV Steel Company, Inc., National Steel Corporation (Midwest Steel Division), Union Carbide Corporation, and USX Corporation (USS Division), Appellee (Respondent and Intervenors Below).

No. 93A02–8805–EX–193.

Court of Appeals of Indiana, First District.

May 22, 1989.

Rehearing Denied July 14, 1989.

Thomas E. Kieper, James W. Burk, Office of the Utility Consumer Counselor, Indianapolis, for appellant.

Richard M. Schumacher, Charles W. Webster, Eichhorn, Eichhorn & Link, Hammond, Fred E. Schlegel, Michael J. Huston, Mary M. Stanley, Julie Sommers, Baker & Daniels, Indianapolis, for appellee.

ROBERTSON, Judge.

This case concerns Northern Indiana Public Service Company, Inc. (NIPSCO)'s failure to apply to the Indiana Utility Regulatory Commission (Commission) for prior approval of its proposed corporate restructuring. The office of the Utility Consumer Counselor (Consumer Counselor) maintains that Indiana law requires state approval of NIPSCO's formation of a holding company and sought to force NIPSCO to obtain that approval by moving the Commission to hold an adjudicatory hearing at which the Commission would determine whether the proposed reorganization was in the public interest. The Commission solicited a written list of the Consumer Counselor's concerns, reviewed NIPSCO's responses and then issued an order which is the subject of this appeal. The Commission deferred consideration of the Consumer Counselor's concerns, ordering an investigation of corporate reorganizations generally, in anticipation of rulemaking proceedings. The Commission also dismissed the proceedings initiated by the Consumer Counselor before it, expressly reserving consideration of IND.CODE 8–1–2–83, upon which the Consumer Counselor relied, for another day.

The Consumer Counselor now seeks judicial review of the Commission's order. He argues that I.C. 8–1–2–83 requires the Commission to hold a hearing to approve or disapprove certain types of transactions, including the type of transaction being contemplated by NIPSCO. He complains that by refusing to resolve in this proceeding the question of the Commission's authority over corporate reorganizations like the one being considered by NIPSCO, the Commission has either violated I.C. 8–1–2–83 or failed to fulfill its factfinding obligations in a manner sufficient for appellate review.

NIPSCO contends, however, that the Commission, in the exercise of its discretion, could properly submit the matter to investigation and ultimately proceed by rulemaking rather than adjudication. NIPSCO also reiterates its earlier arguments that the appeal should be dismissed because the matter is not ripe for judicial review and the Consumer Counselor lacks standing.

Intervenors, American Maize–Products Company, The Dalton Foundries, Inc., Inland Steel Company, LTV Steel Company, Inc., National Steel Corporation, Union Carbide Corporation and USX Corporation have also favored us with a brief. Their position is first, that the Commission has no jurisdiction whatsoever over an exchange of stock by stockholders, when no sale, assignment, transfer, lease or encumbering of a utility's franchise, works or system occurred, and second, even if I.C. 8–1–2–83 applies to an exchange of shares as is involved here, the Commission does not have jurisdiction until an applicant seeks approval. Since NIPSCO has not yet sought approval of its reorganization, no matter is before the Commission to be adjudicated and no hearing is yet required. With respect to the Commission's decision to engage in rulemaking at some point in the future, the intervenors argue that the Commission having no jurisdiction over the exchange of shares, could not have abused its discretion by directing the Consumer Counselor to offer its concerns at subsequent rulemaking proceedings.

As we indicated earlier, the Consumer Counselor maintains that the only legal question before the Commission and now before this court is whether the proposed creation of a utility holding company falls within the scope of I.C. 8–1–2–83. In essence, the Consumer Counselor seeks a declaration resolving the question whether under the applicable statute, the Commission has subject matter jurisdiction. In the past, we have held that the Public Service Commission, now the Indiana Utility Regulatory Commission, as an administrative agency of the state with limited jurisdic-

tion, does not have the statutory authority to issue declaratory rulings of this type. *Kentucky–Indiana Municipal Power Association v. Public Service Co. of Indiana, Inc.* (1979), 181 Ind.App. 639, 393 N.E.2d 776. *Cf., also, U.S. Steel Corp. v. Northern Indiana Public Service Commission,* Ind.App., 482 N.E.2d 501, *on rehearing,* 486 N.E.2d 1082, 1087 (1985). Since the issue raised by the Consumer Counselor's motion for a hearing involved a determination of the legal status of NIPSCO's proposal before the Commission, a declaratory judgment proceeding before a court would have been the appropriate means of adjudicating the controversy. The Commission, therefore, correctly rejected consideration of the scope of its authority under I.C. 8–1–2–83 when it was confronted with the issue in the Consumer Counselor's motion for hearing.

■ What remains before us is an appeal from an order of the Commission initiating an investigation into the implications of a corporate reorganization on a public utility. Although the Consumer Counselor argues that the Commission lacks the authority to promulgate rules and regulations governing the creation of holding companies, he does not suggest that the Commission is without authority to inquire into the management of all public utilities or to consider the effects of different corporate structures upon the adequacy of services or reasonableness of rates. *See, e.g.,* I.C. 8–1–2–48; I.C. 8–1–2–49; I.C. 8–1–2–58. *Cf., also,* I.C. 8–1–2–69. Inasmuch as the Commission has done nothing but initiate an investigation, an action which is clearly within its discretion to undertake, there is no justiciable factual or legal controversy before us. The appeal should therefore be dismissed. *Indiana & Michigan Electric Co. v. Public Service Commission* (1986), Ind.App., 495 N.E.2d 779, *trans. denied.*

Appeal dismissed.

NEAL, J., concurs.

STATON, J., dissents with separate opinion.

STATON, Judge, dissenting.

I dissent from the Majority because the Indiana Utility Regulatory Commission does have jurisdiction to approve or disapprove the proposed corporate reorganization. The issue before this Court should be stated as follows:

Whether a proposed corporate reorganization to form a holding company which may require the transfer of stock and the encumbrance of a utility's franchise triggers the jurisdiction of the Indiana Utility Regulatory Commission under I.C. 8–1–2–83?

The statute, I.C. 8–1–2–83, provides that no public utility shall transfer or encumber its franchise, works, or system to any corporation without the approval of the commission. The proposal is a transfer of stock to a holding company which could drastically affect rates and capital. The statute does not require an investigation for the purpose of making more regulations, but it does require approval by the Commission.

One contention offered by the Appellees in opposition to the jurisdiction of the Commission is that there is nothing before the Commission because NIPSCO has not sought or petitioned for approval. This is a specious contention that should not be taken seriously. On page 5, footnote 2 of Appellee's Brief, it is conceded that "NIPSCO has previously relied on the FERC's statutory obligation to serve a copy of NIPSCO's application on the Indiana Commission. 16 U.S.C. Sec. 824b(a)."

In an order issued by the Federal Energy Regulatory Commission, dated February 29, 1988, on page 321 of the Record, NIPSCO denies the necessity of notice to or the jurisdiction of the Indiana Commission. At page 322 of the Record, the last two lines of the third paragraph the order states: "Northern Indiana also denies that state approval is required for its proposed restructuring." If this is a sound position, it seems quite senseless to send the Commission notice as NIPSCO suggests in footnote 2 of its Brief. Clearly, the intent of the statute is to permit a review of a business decision which adversely affects con-

sumer rates and the capital structure of a utility.

I.C. 8–1–2–49 provides:

The commission shall have jurisdiction over holders of the voting capital stock of all public utility companies under its jurisdiction to such extent as may be necessary to enable the commission to require the disclosure of the identity in respective interests of every owner of any substantial interest in such voting capital stock. One percent [1%] or more is a substantial interest, within the meaning of this section.

This statute is merely an example of the legislature's intent to have an active, reviewing interest in the operation of utilities which have a monopolistic advantage in the state's economic community. The statutory scheme strikes a balance between a fair return to the utility and reasonably fair rates to the consumer. I.C. 8–1–2–83 is just another example of the Commission's jurisdictional opportunities to protect the consumer public from unwise business schemes and efforts to avoid the regulatory schemes carefully orchestrated by the legislature.

The Public Utility Holding Company Act of 1935 sets forth the federal policy with regard to holding companies and is instructive:

... it is declared to be the policy of this chapter, in accordance with which policy all the provisions of this chapter shall be interpreted, to meet the problems and eliminate the evils as enumerated in this section, connected with public-utility holding companies which are engaged in interstate commerce or in activities which directly affect or burden interstate commerce; ...

15 U.S.C. § 79a(c).

Some of the evils of public utility holding companies enumerated in 15 U.S.C. § 79a(b) are:

(1) when such investors cannot obtain the information necessary to appraise the financial position or earning power of the issuers, because of the absence of uniform standard accounts; when such securities are issued without the approval or consent of the States having jurisdiction over subsidiary public-utility companies; when such securities are issued upon the basis of fictitious or unsound asset values having no fair relation to the sums invested in or the earning capacity of the properties and upon the basis of paper profits from intercompany transactions, or in anticipation of excessive revenues from subsidiary public-utility companies; when such securities are issued by a subsidiary public-utility company under circumstances which subject such company to the burden of supporting an overcapitalized structure and tend to prevent voluntary rate reductions;

(2) when subsidiary public-utility companies are subjected to excessive charges for services, construction work, equipment, and materials, or enter into transactions in which evils result from an absence of arm's-length bargaining or from restraint of free and independent competition; when service, management, construction, and other contracts involve the allocation of charges among subsidiary public-utility companies in different States so as to present problems of regulation which cannot be dealt with effectively by the States;

(3) when control of subsidiary public-utility companies affects the accounting practices and rate, dividend, and other policies of such companies so as to complicate and obstruct State regulation of such companies, or when control of such companies is exerted through disproportionately small investment;

(4) when the growth and extension of holding companies bears no relation to economy of management and operation or the integration and coordination of related operating properties; or

(5) when in any other respect there is lack of economy of management and operation of public-utility companies or lack of efficiency and adequacy of service rendered by such companies, or lack of effective public regulation, or lack of economies in the raising of capital.

For the above reasons and many others that this writer could set forth, the Indiana

Utility Regulatory Commission needs to approve any proposed reorganization plan to form a holding company. The Indiana Legislature recognized this need when it enacted I.C. 8–1–2–83 and gave the Commission jurisdiction to review reorganization proposals.